### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

PATRICK ROBERTSON,
ADC #94110                                                                              PLAINTIFF

V.                                   No. 5:12CV00196 DPM-BD

PHILLIP McDANIEL, *et al.*                                                   DEFENDANTS


### RECOMMENDED DISPOSITION

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge D. P. Marshall Jr.  Any party may file written objections to this

Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the

United States District Court Clerk within fourteen (14) days of this Recommendation.  A

copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    Background:

Plaintiff Patrick Robertson, an Arkansas Department of Correction ("ADC")

inmate, filed this lawsuit pro se under 42 U.S.C. § 1983.  (Docket entry #2)  In his

complaint, he alleges that the Defendants confiscated religious materials, including his

Bible and religious texts, after he was assigned to punitive isolation in January of 2012.[1]

Specifically, he claims that the Defendants wrongly failed to return his property to him

and violated his First Amendment right to practice his religion.

Defendants Gaylon Lay, Larry May, and Phillip McDaniel previously moved for

summary judgment based on Mr. Robertson's failure to exhaust his administrative

remedies.  (#11)  The Court granted the motion, in part, and dismissed claims against

Defendants Lay and May.  (#22)

Defendants McDaniel and Johnson have now moved for summary judgment,

arguing that qualified and sovereign immunity shield them from liability.  (#26)  Mr.

---

[1]Although Mr. Robertson originally claimed that his Bible was among his
confiscated religious materials, the Bible is not listed on the ADC confiscation form. The
personal property inventory record dated January 25, 2012, indicates that Mr. Robertson
was allowed to keep his Bible with him in punitive isolation.  (#28-7)  Mr. Robertson
does not dispute this fact.

Robertson, through his court-appointed attorney, has responded to the motion.  (#31, #32, #33)  He has also filed a motion for leave to file an amended complaint to clarify his damages demand.  (#34)

## III.    Discussion:

### A.    Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  When a plaintiff cannot come forward with enough evidence to establish a necessary element of her claim, the moving party is entitled to judgment as a matter of law on that claim.  *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

### B.    Qualified Immunity

Qualified immunity shields state officials from liability in a §1983 case, "unless the official's conduct violates a clearly established constitutional or statutory right of

which a reasonable person would have known." *Brown v. City of Golden Valley*, 574

F.3d 491, 495 (8th Cir. 2009).  In determining whether an individual is entitled to

qualified immunity, the Court must determine whether the facts alleged show that the

officer's conduct violated a constitutional right and whether that right was "clearly

established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570

F.3d 984, 988 (8th Cir. 2009).  The Court may address either "aspect[] of qualified

immunity in the order most suited to the particular case." *Rohrbough v. Hall*, 586 F.3d

582, 585 (8th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808

(2009)).

Defendants argue that the confiscation and destruction of Mr. Robertson's

secondary religious texts pursuant to ADC policy did not substantially burden his

sincerely held religious beliefs.  Thus, they contend, Mr. Robertson's First Amendment

claim fails as a matter of law.  They further argue that, even if Mr. Robertson's First

Amendment rights were violated, they are entitled to qualified immunity because there

was no clearly established law at the time the events occured that would have alerted

them that their conduct would violate Mr. Robertson's constitutional rights.

C.    Analysis

The facts here are undisputed.  ADC policy limits the volume of personal property

an inmate may possess while housed in punitive isolation.  If an inmate has personal

property that cannot be taken into isolation, he is provided a property box in which to

store the excess property.  (#28-13 at p.2)  If an item is not designated for storage in the property box, or if the property does not fit into the inmate's box, that excess property is confiscated.  (#28-13 at p.10)

According to ADC policy, if an inmate does not dispose of confiscated property within thirty days, the property is destroyed.  (#28-13 at pp.5, 10)  An inmate may dispose of confiscated property by mailing the property to someone in the free world (at the inmate's expense), arranging for the property to be picked up by a visitor, donating the items to the ADC, or having the property destroyed.  (#28-13 at pp.3-4, 10)

On January 11, 2012, Mr. Robertson was sentenced to thirty days in punitive isolation.  (#28-1 at p.2)  On January 25, 2012, he designated eight photographs to be preserved.[2]  (#28-3 at p.1)  His remaining personal property, including his secondary religious texts, were confiscated.  (#28-4)

On February 23, 2012, Mr. Robertson was released from punitive isolation for forty-eight hours.  (#28-8)  At that time, he was given access to his confiscated personal property.  (#28-9)  He returned to punitive isolation on February 25, 2012, as a result of another disciplinary conviction.  (#28-8)

---

[2] According to the property disposal form dated February 13, 2012, Mr. Robertson indicated that he wanted the eight photographs to be given to Charlotte Ramsey.  (#28-6) It is unclear, however, whether Mr. Robertson wanted those materials mailed to her or if Ms. Ramsey was to pick up the photographs during visitation.  (#28-6)  In any event, the photographs are not at issue in this lawsuit.

Mr. Robertson now argues that: he was not given the option to dispose of his personal property, in violation of ADC policy; there was ample room in his property box to store his secondary religious texts; and his continued possession of the religious texts did not pose a security risk.

As a matter of law, the allegation that Defendants violated ADC policy does not rise to the level of a constitutional deprivation. *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no §1983 liability based on prison officials' violation of prison policy; inmate must prove constitutional-right violation). Moreover, the evidence shows that Mr. Robertson signed the ADC confiscation form and specifically identified the property that he wanted preserved; he also identified the person to whom the property should be given.

Mr. Robertson's assertion that there was ample room in his personal property box to store his secondary religious texts, even if true, cannot save his property-loss claim. An inmate has no federal claim for loss of personal property– even if the property was intentionally destroyed– so long as the state offers an adquate post-deprivation remedy. *Ali v. Ramsdell*, 423 F.3d 810, 814 (8th Cir. 2005) (quoting *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984)). Arkansas offers a variety of post-deprivation remedies for the loss of property.

Furthermore, Mr. Robertson's assertion that there was no security risk in his continued possession of the materials at issue is not only irrelevant to his property-loss claim, but also is unpersuasive. Not only has Mr. Robertson failed to offer any proof to

support his no-risk conclusion; but more importantly, his own conduct belies his

hypothesis.

Defendants attached the affidavit of Vernon Robertson, Chief of Security at the

Cummins Unit, in support of their summary judgment motion.  Chief Robertson testifies

that all limits placed on the volume of personal property an inmate may possess are "a

matter of institutional security"  (#28-11 at p.2)  As justification for the policy, he

explains that excessive property creates a risk of fire, rodent or pest infestation, as well as

opportunities for inmates to conceal weapons and other contraband.  (#28-11 at pp.1-2)

Here, during the original inventory of Mr. Robertson's personal property, "green

money" (cash) was found hidden in a coffee cup.  (#28-2)  Because cash is considered

contraband under ADC policy, Mr. Robertson was charged and convicted of a major

disciplinary.  (#28-2)  Ironically, by his own actions, Mr. Robertson has demonstrated the

validity of the Defendants' concern that contraband is apt to be secreted in inmates'

personal property.

For all of these reasons, Mr. Robertson's allegations that the Defendants

improperly or illegally mishandled or destroyed his personal property, standing alone,

cannot support a federal claim for relief.

The fact that the personal property included religious materials, however, prompts

further discussion.  If the deprivation of his religious materials was serious enough to

implicate the First Amendment, Mr. Robertson's allegation that materials would have fit

into his property box might be relevant.  But the first question to be adresssed is whether

the confiscation of the religious materials deprived Mr. Robertson of his First

Amendment right to practice his religion.  If not, that will end the inquiry.

The test for deciding Mr. Robertson's First Amendment claim is whether there is

evidence that his religious beliefs were substantially burdened when the Defendants

denied him access to the secondary religious texts.  In order to find that a prison

regulation "substantially burdened" an inmate's ability to exercise his religion, the

regulation:

> must significantly inhibit or constrain conduct or expression that manifests some
> central tenet of a person's individual religious beliefs; must meaningfully curtail a
> person's ability to express adherence to his or her faith; or must deny a person
> reasonable opportunities to engage in those activities that are fundamental to a
> person's religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (quotation and

alterations omitted).

As evidence of the substantial burden, Mr. Robertson notes that he requested an

interview with Warden Lay to discuss the confiscation of the Philadelphia Church of God

texts and his need to determine the dates of holy days.  (#28-12)  Although Mr. Robertson

asserts that he was "unable to exercise his religious without his materials," he has not

come forward with evidence to show that he was prevented from observing holy days, or

that any central tenet of his religion was impinged as a result of the Defendants' conduct.

(#32 at p.7)  It is undisputed that Mr. Robertson maintained possession of his Bible at all

times and that he had access to the chaplain at the Cummins Unit during his assignment to punitive isolation. (#28-11 at p.2) And notably, Mr. Robertson had access to his secondary religious texts during his forty-eight-hour release from punitive isolation.

Because Mr. Robertson has failed to come forward with any evidence to create a genuine issue of material fact as to whether the Defendants substantially burdened his ability to practice his religion, his First Amendment claim fails as a matter of law. Therefore, there is no cause to discuss whether qualified immunity would shield the Defendants from liability. Likewise, there is no reason to recite the law of sovereign immunity that shields official-capacity Defendants from the imposition of money damages.

Mr. Robertson's proposed amendment to his complaint would add nothing to affect the recommendation here that summary judgment be granted to the Defendants on all remaining claims. That said, Mr. Robertson's appointed attorney, Hunter Hanshaw, is to be commended for his diligent work in this case on behalf of Mr. Robertson.

## IV. Conclusion:

The Court recommends that the motion for summary judgment (#27) be GRANTED and that Mr. Robertson's First Amendment and federal due process claims be DISMISSED, with prejudice. His claim for loss of personal property, however, should be dismissed without prejudice. Mr. Robertson's motion to amend (#34) should be DENIED, as moot.

DATED this 19th day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE